[Cite as *State v. H.M.*, 2025-Ohio-5522.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 115043 |
| v. | : | |
| H.M., | : | |
| Defendant-Appellee. | : | |

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** VACATED AND REMANDED
**RELEASED AND JOURNALIZED:** December 11, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-10-536102

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Chauncey Keller, Assistant Prosecuting Attorney, *for appellant.*

Carrabine & Reardon and James W. Reardon, *for appellee.*

MICHAEL JOHN RYAN, J.:

{¶ 1} This is plaintiff-appellant State of Ohio's, second appeal in this case, which centers on the trial court's decision granting defendant-appellee H.M.'s, motion to seal or expunge his record. In the first appeal, this court reversed the trial

court's judgment granting H.M.'s motion to seal or expunge the record and remanded the case "for a hearing to determine whether the victim, D.K., has received full payment of the restitution amount ordered by the trial court in its October 31, 2010 judgment entry of conviction to qualify H.M. as an eligible offender under R.C. 2953.32." *State v. H.M.*, 2025-Ohio-46, ¶ 1 (8th Dist.).

{¶ 2} On remand, the trial court held a hearing in compliance with the *H.M.* Court's mandate and, on April 16, 2025, the trial court issued a judgment granting H.M.'s motion to seal or expunge the record in this case. The State appeals again. For the reasons that follow, we remand this case to the trial court with instructions to vacate its April 16, 2025 judgment.

**Factual and Procedural History**

{¶ 3} H.M. is a formerly licensed Ohio attorney, who in 2010, pleaded guilty to theft, a felony of the fifth degree. The victim, D.K., was a former client.[1] Prior to sentencing, H.M. submitted a sentencing memorandum in which he stated that D.K. was entitled to repayment of $36,783.01 and indicated that D.K. had applied for reimbursement through the Ohio Supreme Court Client Security Fund ("the Fund").

{¶ 4} The trial court sentenced H.M. to five years of community-control sanctions and ordered him to pay restitution to D.K. in the amount of $36,783.01, payable through the probation department.

---

[1] D.K. was one of 14 clients victimized by H.M.

{¶ 5} In May 2011, the trial court determined that H.M. may be transferred to low-risk supervision but that he needed to have a monthly payment plan established for restitution. In November 2011, the trial court ordered that all restitution be forwarded to the Fund.

{¶ 6} H.M.'s community-control sanctions were on track to potentially expire on October 12, 2015. On October 29, 2015, H.M. filed an executed cognovit note dated June 20, 2015, payable to the Fund in the amount of $30,039.01. The note indicated that the original amount of H.M.'s obligation was $36,783.01, which was the amount of restitution that the trial court imposed.

{¶ 7} In February 2024, H.M. filed a motion to seal or expunge his record in this case. The trial court ordered the probation department to prepare an expungement report, which the department did. According to the report, H.M.'s probation terminated on October 12, 2015, but a restitution balance of $27,744.01 remained. The report did not provide any clarification as to whether D.K. received compensation through the Fund or if the restitution amount was what was currently owed under the cognovit note.

{¶ 8} The State opposed H.M.'s motion, contending that he was ineligible because he had not fulfilled the restitution order and thus had not achieved "final discharge" as required under R.C. 2953.32. The State did not indicate whether the victim had received compensation through the Fund. The State waived its right for a hearing on the motion.

{¶ 9} The trial court determined that H.M. qualified as an eligible offender under R.C. 2953.32(A) and had satisfied all the criteria, including being rehabilitated to the court's satisfaction, and granted H.M.'s motion.

{¶ 10} The State appealed and, as mentioned, this court reversed the trial court's judgment granting H.M.'s motion to seal or expunge the record and remanded the case "for a hearing to determine whether the victim, D.K., has received full payment of the restitution amount ordered by the trial court in its October 31, 2010 judgment entry of conviction to qualify H.M. as an eligible offender under R.C. 2953.32." *H.M.*, 2025-Ohio-46, at ¶ 1 (8th Dist.). The *H.M.* decision further stated, "Accordingly, we sustain the State's assignment of error, reverse the trial court's judgment, and remand for the trial court to conduct a hearing pursuant to R.C. 2953.32 to ascertain whether H.M. qualifies as an eligible offender." *Id.* at ¶ 19.

{¶ 11} On remand, the trial court held a hearing at which counsel for the State and counsel for H.M. appeared and made their respective arguments; H.M. was not present. The State maintained that H.M. had neither fulfilled his restitution obligation to the victim nor reimbursed the Fund in an amount to satisfy his restitution obligation to the victim. The State submitted exhibit No. 1, which was a March 28, 2025 letter from the director of the Fund stating that the Fund reimbursed a total of $144,640.47 to the 14 victims and had received a total of $9,039 in payments from H.M., leaving a balance owed by H.M. of $135,601.47. The

letter further indicated that the last payment H.M made to the Fund was on August 5, 2016.

{¶ 12} The State also submitted exhibit No. 2, which was a complete release, assignment of rights, and subrogation agreement the victim executed. Under the agreement, the victim acknowledged that he received $36,783.01 from the Fund as reimbursement for the restitution award in this case.

{¶ 13} The State further argued at the hearing that "there's no evidence of rehabilitation in this case, something that the Court must decide when granting [an] application." Tr. 11. The State relied on paragraph 19 of *H.M.*, 2025-Ohio-46 (8th Dist.), for its proposition that H.M.'s rehabilitation was part of this court's remand mandate.

{¶ 14} On the other hand, the defense maintained that because the victim had been fully compensated by the Fund, H.M. achieved final discharge of his restitution order. Relying on the first paragraph of *H.M.*, it was the defense's position that this court's remand mandate was for the limited purpose of determining whether H.M. fulfilled his restitution order.

{¶ 15} The trial court stated that there was "a conflict in the way this thing [i.e., this court's remand mandate] is couched," but found, as to whether the victim was fully compensated, "The answer is yes." Tr. 14. The trial court did not consider H.M.'s rehabilitation and granted H.M.'s motion to seal or expunge, finding that the victim had been fully compensated. The State appeals again, presenting a sole

assignment of error challenging the trial court's decision granting H.M.'s motion to seal or expunge.

**Law and Analysis**

{¶ 16} The sealing or expungement of a criminal record is an "act of grace created by the state." *State v. Hamilton*, 75 Ohio St.3d 636, 639 (1996). Generally, we review a trial court's decision to seal or expunge a record of conviction under an abuse-of-discretion standard. *State v. J.W.G.*, 2024-Ohio-2071, ¶ 6 (8th Dist.), citing *Bedford v. Bradberry*, 2014-Ohio-2058, ¶ 5 (8th Dist.). However, whether an applicant is eligible to have his or her record sealed or expunged is a question of law to be reviewed de novo. *State v. V.S.*, 2017-Ohio-1565, ¶ 6 (8th Dist.), citing *Bradberry* at *id.*

{¶ 17} The State has presented two issues in this appeal: (1) whether H.M. achieved "final discharge," which is a requirement for the sealing or expungement of a record and (2) whether H.M. met the other statutory requirements for sealing or expungement so as to qualify as an eligible offender.

{¶ 18} Regarding the first issue, it is the State's position that H.M. did not achieve final discharge. In opposing the State, H.M. cites *State v. C.S.*, 2018-Ohio-1841 (8th Dist.). We find *C.S.* distinguishable from this case.

{¶ 19} In *C.S.*, the defendant pleaded no contest to two theft charges. The trial court sentenced the defendant to five years of community-control sanctions and ordered her to pay restitution "at a minimum of $750.00 per month." *Id.* at ¶ 2. The trial court's sentencing entry did not identify the victim or state the total restitution

amount. Prior to the defendant's no-contest plea, the defendant had already paid the victim $15,000.

{¶ 20} Approximately two years after being sentenced, the defendant filed a motion to terminate the community-control sanctions and be placed on inactive probation. The trial court held a hearing and found the defendant compliant with the conditions of probation and current with the restitution order. The trial court denied the defendant's motion, however, and ordered the defendant to continue making restitution payments, stating "community control to terminate upon restitution in full." *Id.* at ¶ 3.

{¶ 21} Over a year and a half later, the defendant filed another motion to terminate the community-control sanctions. In the motion, the defendant stated that the total restitution order to the victim was $100,000. The defendant stated that she had paid $63,250 directly to the victim, and the remaining $36,750 balance was paid to the victim through the Fund. The defendant further stated that she had paid $10,035 of the $36,750 owed to the Fund, making her total payments $73,285. The following month, the defendant entered into a cognovit note with the Fund in the amount of $26,250, with the original balance of $36,750. The defendant filed the cognovit note with the trial court in January 2013, and thereafter the trial court terminated the defendant's community-control sanctions.

{¶ 22} In April 2017, the defendant filed a motion for expungement, which the State opposed. The trial court ordered an expungement investigation report and set the matter for a hearing. At the hearing, the State argued that it opposed the

expungement because the defendant still owed $26,250 in restitution. The defendant argued that the victim was not owed any restitution because the Fund made the victim whole by paying the victim the remaining balance of the restitution. Thus, according to the defendant, the Fund made the victim whole. The defendant argued that because the victim had been made whole and the matter was between the defendant and the Fund, the restitution order had been satisfied and she was eligible for an expungement. The trial court agreed and the State appealed.

{¶ 23} Recognizing that courts speak through their journal entries, this court found that the lack of specificity in the trial court's sentencing entry as to the victim and the total amount of the restitution order meant that the trial court's restitution order was "a payment plan of $750 per month for five years, which was the length of [the defendant's] community control sanction." *C.S.*, 2018-Ohio-1841, at ¶ 13 (8th Dist.). This court found that even though the trial court held that the defendant's sentence was completed, the defendant nonetheless "recognizes her obligation and is still making payments on the $26,250 balance she owes the Fund." *Id*. at ¶ 17. Further, the defendant had recently lost her job but was still making payments at a reduced rate until she could find employment again. This court noted that the defendant

> continues to demonstrate a good faith effort in creating the obligation of the cognovit note. She signed the cognovit note to be responsible for the balance and has continued to pay it, despite losing her job. She has repaid the Fund almost $19,000 since the signing of the cognovit note. In total, it appears that she has repaid over $80,000. In seeking an expungement of her criminal record, [the defendant] hopes to obtain

gainful employment so that she can continue to repay the cognovit note until it is satisfied.

*Id.* at ¶ 19.

**{¶ 24}** The *C.S.* Court, therefore, upheld the trial court's decision granting the defendant's application for expungement.

**{¶ 25}** The within case is distinguishable from *C.S.* The sentencing entry here, unlike the one in *C.S.*, was clear as to the amount of restitution and the victim who was to receive it. Moreover, unlike the defendant in *C.S.*, who continued making payments to the Fund after executing the cognovit note and even despite her job loss, as of March 2025, H.M. had only paid the Fund a total of $9,039 and had a remaining balance of $135,601.47 (for all 14 victims). *See* State's exhibit No. 1. The total amount H.M. paid, $9,039, is insufficient to cover the total restitution amount of $36,783.01 owed to the victim here. Further, unlike the defendant in C.S., who made a "good faith effort" in continuing to pay restitution, the last payment the Fund received from H.M. was in August 2016. *Id.*

**{¶ 26}** For all of the above-stated reasons, *C.S.* is distinguishable from this case. This case is more akin to *State v. McKenney*, 2001 Ohio App. LEXIS 2424 (8th Dist. May 31, 2001), and *State v. Pettis*, 133 Ohio App.3d 618 (8th Dist. 1999).

**{¶ 27}** In *Pettis*, the defendant was sentenced to three years of community-control sanctions (then called probation) and ordered to pay $20,396 in restitution. After completing probation, the defendant filed a motion to seal the record of her conviction. The State opposed the motion, citing *State v. Wainwright*, 75 Ohio

App.3d 793 (8th Dist. 1991), and contended that the defendant failed to pay complete restitution as required by her sentence because she had a $15,108 balance on the restitution imposed. The defendant maintained that she paid $250 a month for three years, which was the term of her community control and believed the restitution applied only to the term of her community control. The trial court, noting that the defendant signed a cognovit note at the time of her sentencing, determined that defendant made complete restitution and granted the motion to seal the record.

{¶ 28} On appeal, this court considered its prior decision in *Wainwright*. In *Wainwright*, the defendant was sentenced to probation and ordered to pay restitution. After the defendant had complied with his restitution obligation and his probation ended, he applied to have the record of his conviction sealed. However, the defendant applied before the required statutory three-year period had expired. The trial court granted the defendant's motion. This court reversed, finding that because the defendant "failed to pay the restitution until December 19, 1990, he was, therefore, not eligible to file for sealing of his record of conviction until three years from that date." *Id.* at 795. This court was not persuaded by the defendant's argument that his probation ended three years after sentencing and that he was therefore eligible to have his record sealed and held:

> Probation is a sentencing condition, similar to a fine or restitution. An applicant is not entitled to seal his [or her] conviction records until all of the sentencing conditions imposed by the court are fulfilled. *State v. Braun*, [1983 Ohio App. LEXIS 15139 (8th Dist. July 7, 1983)]. In the case *sub judice* the sentencing conditions were both probation and restitution; the restitution condition had not been fulfilled.

(Italics in original.) *Id.*

{¶ 29} The *Pettis* Court recognized the "added wrinkle" of the cognovit note in that case was not present in *Wainwright* and stated that

> a promissory note cannot be considered "payment in full" sufficient to constitute a final discharge under R.C. 2953.32. A promissory note is nothing more than the promise to pay in the future -- by definition, the holder of a promissory note is not paid until the holder actually receives payment pursuant to the terms of the note. Until the holder of a note actually has payment in hand, the debt cannot be considered to be discharged.

*Pettis* at 620.

{¶ 30} In *Pettis*, similar to this case, the defendant had not made a payment toward restitution in a number of years. The *Pettis* Court recognized that while one of the goals of restitution is to make the victim of a crime whole, restitution is also meant to benefit society as a whole, punish the defendant, and rehabilitate the defendant. To that end, this court reasoned its decision to reverse the judgment of the trial court granting the defendant's motion to seal as follows:

> Were we to affirm the court's decision to seal the record of conviction, we would be creating law that would take away any incentive to pay full restitution. At the time restitution is ordered, an offender, knowing full well that the note is worthless, could sign a note promising payment and then have the record of conviction sealed without ever having made good on the note. The only meaningful collateral disability associated with the restitution order would be the inability to have the record of conviction sealed, but the promissory note would make that disability meaningless. In the end, the offender would have no reason to pay the note.

> Whether the state chooses to collect the debt or not, until such time as the restitution order is paid in full, defendant cannot be considered to have completed the terms of her sentence, and hence cannot be considered "finally discharged" for purposes of having the record of her conviction sealed.

*Id.* at 622-623.

{¶ 31} In *McKenney*, the defendant pleaded guilty to a theft charge and was sentenced to an 18-month suspended sentence and three years of probation. The trial court also ordered the defendant to pay restitution to the victim, a furniture company. Thereafter, the furniture company received payment for the full amount of the restitution order from its insurance company. The defendant then agreed to a civil judgment against her in favor of the insurance company.

{¶ 32} After the defendant's three-year term of probation ended, she filed a motion to seal her record of conviction. The trial court found that, because the defendant allowed the victim's insurance company to obtain a civil judgment against her, she made "complete restitution" and granted her motion to seal her record. *Id.* at *2.

{¶ 33} The State appealed and this court reversed the trial court's judgment. This court found that "[i]n order for R.C. 2953.32 to apply, [the defendant] has to have been discharged for at least three years. However, an offender is not finally discharged until she has served the sentence imposed by the court." *Id.* at *4, citing *Willowick v. Langford*, 15 Ohio App.3d 33 (11th Dist. Apr. 2, 1984), and *Pettis*, 133 Ohio App.3d 618. The *McKenney* Court further found that "[r]estitution, as a condition of an offender's probation, is a part of the offender's sentence." *Id.*, citing R.C. 2951.02(C). This court reasoned that because the defendant had "not fully paid restitution as ordered by the terms of her probation" she "failed to meet a condition of her sentence." *Id.*, citing *Wainwright*, 75 Ohio App.3d 793.

{¶ 34} This court found the trial court's attempt in *McKenney* to distinguish *McKenney* from *Pettis* unpersuasive. Specifically, the trial court in *McKenney* reasoned that the cognovit note in *Pettis* was "a lot less enforceable by a holder than the judgment entered into by" the defendant in *McKenney*. The trial court further distinguished *Pettis*, noting that, in *McKenney*, the insurance company could initiate collection procedures against the defendant, including levying her property and bank accounts, to satisfy the civil judgment. This court found the trial court's reasoning "flawed." *McKenney* at *5.

> There is little difference between holding a cognovit note and having a money judgment against a party. A cognovit note is a powerful promissory note which contains a warrant of attorney to confess by which the maker waives his [or her] right to a court trial and permits judgment to be taken against him [or her], without notice, upon the maker's failure to make the requisite payments. *See*, R.C. 2323.13. Other than the extra step of filing a complaint required to obtain the judgment on the cognovit note, there simply is nothing to support the trial court's opinion that the Pettis cognovit note is a lot less enforceable than the judgment held against McKenney. Further, there is no indication that the holder of the cognovit note in *Pettis* would be precluded, upon obtaining judgment, from seeking the collection remedies which the trial court pointed out are currently available to the insurer in the instant case. The fact is that, like a promissory note, a civil judgment cannot be considered "payment in full" sufficient to constitute a final discharge under R.C. 2953.32. *See*, *Pettis*. Although a civil money judgment clearly obligates the judgment-debtor to satisfy the judgment, until the judgment-creditor actually has payment in hand, the debt has not been satisfied, nor can the judgment be considered to be discharged. *See Id.*

(Italics added.) *McKenney* at *5 - *6

{¶ 35} Like the defendants in *Pettis* and *McKenney*, H.M. failed to meet a condition of his sentence, specifically, he failed to achieve final discharge by paying

the full amount of restitution he was ordered to pay. Therefore, the trial court erred by granting H.M.'s motion to seal or expunge.

{¶ 36} Regarding the second issue raised by the State, this court has recognized that

> "R.C. 2953.32(C)(1) provides for an applicant to have his [or her] record of conviction sealed if the trial court finds him [or her] to be an eligible offender; there are no pending criminal proceedings; he [or she] has been rehabilitated to the satisfaction of the court; his [or her] interests in having his [or her] record sealed are not outweighed by any legitimate governmental need to maintain the record of conviction; and the trial court considers the government's reasons for opposing the application. R.C. 2953.32(C)(1)(a)-(e)."

*State v. S.D.F.*, 2025-Ohio-1832, ¶ 14 (8th Dist.), quoting *State v. A.V.*, 2019-Ohio-1037, ¶ 7 (9th Dist.).

{¶ 37} The *S.D.F.* Court acknowledged that although the rules of evidence do not apply to hearings on motions to seal or expunge, nonetheless, "the applicant has the burden of establishing his [or her] rehabilitation and that his [or her] privacy interests are equal to or greater that the government's interest to maintain the record of conviction." *Id.* at ¶ 16, citing *A.V.* at ¶ 9, and *State v. Shaffer*, 2010-Ohio-6565, ¶ 30, 32 (11th Dist.). This court noted that the burden is generally met through the presentation of evidence or testimony and that neither a mere statement that the applicant has satisfied the requirements nor arguments of counsel are sufficient to satisfy the burden. In the instant case, H.M. failed to present any evidence or testimony demonstrating compliance with the R.C. 2953.32 requirements. Indeed, H.M. was not even present at the hearing on remand, there was no hearing on H.M.'s

initial motion to seal or expunge, and his motion was a "three-paragraph motion" without "any evidence in support of his motion." *H.M.*, 2025-Ohio-46, at ¶ 7 (8th Dist.).

**Conclusion**

{¶ 38} H.M did not complete the terms of his sentence and, therefore, has not been finally discharged for the purpose of having his record sealed or expunged. Further, H.M. failed to demonstrate that he was a statutorily eligible offender. The trial court's judgment granting his motion to seal or expunge is therefore vacated.

{¶ 39} Case remanded to trial court to vacate the April 16, 2025 judgment granting H.M.'s motion to seal or expunge.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

EILEEN T. GALLAGHER, P.J., and
WILLIAM A. KLATT, J.,* CONCUR

(*Sitting by assignment: William A. Klatt, J., retired, of the Tenth District Court of Appeals.)